```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                            :
HILDA L. SOLIS, Secretary of Labor, United States           :
Department of Labor,                                        :
                                                            :
                                                            :         10 Civ. 7242 (PAE)
                                            Plaintiff,      :
                        -v-                                 :         OPINION AND ORDER
                                                            :
CINDY'S TOTAL CARE, INC., d/b/a CINDY'S NAM                 :
SAENG SIM, NAM SAENG SIM, individually, and                 :
BYUNG SOOK KIM, individually,                               :
                                                            :
                                            Defendants.     :
                                                            :
------------------------------------------------------------------------X
```

**PAUL A. ENGELMAYER, District Judge:**

This Opinion and Order supplements the Court's Opinion and Order of October 31, 2011 (Dkt. 42). Specifically, it amplifies on the Court's reasoning in granting the motion *in limine* of the plaintiff Secretary of Labor ("Plaintiff" or "the Secretary") to exclude evidence as to the immigration status of the employees whose work hours are at issue in this Fair Labor Standards Act case.

**I.    Background**

At a status conference held on September 15, 2011, the Court established a pre-trial schedule under which motions *in limine* were due October 14, 2011. On October 12, 2011, the Secretary moved *in limine* for an order barring the defense from introducing evidence as to the immigration status or national origin of any of the defendants' employees and from questioning employee witnesses as to these subjects at trial (Dkt. 27). The Secretary's motion was prompted by the defendants' ("Defendants" or "Cindy's") Answer to the Complaint, in which the defense identified the employees' immigration status and national origin as an affirmative defense. By

letter to the Court dated October 25, 2011, the defense stated that it was withdrawing that affirmative defense and consenting to its dismissal, and that it no longer opposed the Secretary's motion *in limine*. The Court endorsed that letter (Dkt. 41). The Court nevertheless *sua sponte* reviewed the relevant statutory provisions and precedents. On October 31, 2011, the Court issued an Opinion and Order, explaining why evidence of immigration status or national origin, if offered, would have been excluded (Dkt. 42).

A bench trial in this matter began on November 29, 2011. On the first day of trial, the defense moved to withdraw its consent to the motion *in limine*. It asked the Court to reconsider its ruling in light of the opinions in *Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137 (2002), and *NLRB v. Domsey Trading Corp.*, 636 F.3d 33 (2011). The Court declined to permit the defense to withdraw that consent. The Court noted that the defense was not relying on an intervening change of law, as both decisions had predated the motion *in limine*, and the Secretary had, in fact, cited *Hoffman* in her memorandum in support of that motion. However, the Court stated that, in the interests of justice, it would *sua sponte* review anew those two decisions.

The Court has again reviewed those opinions. For the reasons that follow, the Court continues to believe that the immigration status and national origin of the employees in this case is irrelevant and must be excluded. As a result, the Court's October 31, 2011 Opinion and Order stands. The Court has, however, concluded that there is value in supplementing the analysis in its initial Opinion and Order, to more fully explain why the decisions in *Hoffman* and *Domsey* are consistent with this result. This Opinion and Order supplies that analysis.[1]

---

[1] On November 30, 2011, the second day of trial, the Court notified counsel from the bench that it would adhere to its earlier ruling, and briefly explained its reasons for concluding that *Hoffman* and *Domsey* are consistent with that ruling.

**II.      Discussion**

In *Hoffman*, the employer petitioned for judicial review of a determination by the National Labor Relations Board ("NLRB" or "the Board") awarding backpay to an undocumented immigrant employee who had fraudulently gained employment in the United States by tendering the birth certificate of another person.  The backpay ordered by the NLRB was measured from the date of the employer's unlawful termination of the employee up to the later date when the employer had discovered that the employee was not authorized to work in the United States.  *See Hoffman*, 535 U.S. at 140-42.  On appellate review, the Supreme Court held that federal immigration policy, as reflected in the Immigration Reform and Control Act of 1986 precluded the NLRB from awarding such backpay.  The *Hoffman* Court characterized the issue as follows:  "The Board asks that we overlook [the fact that under the IRCA it is impossible for an undocumented alien to obtain employment without either the employee or the employer contravening federal policy], and allow it to award backpay to an illegal alien for years of work not performed, for wages that could not lawfully have been earned, and for a job obtained in the first instance by a criminal fraud."  *Hoffman*, 535 U.S. at 148-49.

The facts of *Hoffman* materially differ from those here.  Most centrally, in *Hoffman*, the backpay award that was overturned exclusively covered a post-termination time period.   The Supreme Court held that it would be inconsistent with federal immigration law to pay an employee for work not performed where, under immigration law, the employee was ineligible to perform that work.  The same logic prevailed in *Domsey*, which relied on *Hoffman*.  There, approximately 200 employees of the defendant company went on strike, alleging that the defendant had committed unfair labor practices.  *Domsey Trading Corp.*, 636 F.3d at 35-36.  After the strike, the employees made an unconditional offer to return to work, which the

defendant subsequently rejected. Following an NLRB order to reinstate the striking workers, the Board held a hearing to determine the backpay owed. In the hearing, Domsey sought to introduce evidence that several striking employees had not been legally authorized to work in the United States during the backpay period; however, the Administrative Law Judge (ALJ) excluded this evidence as irrelevant. On review, the Court held that the NLRB had abused its discretion by failing to remand the case to the ALJ for further proceedings consistent with *Hoffman*.

As in *Hoffman*, the backpay award in *Domsey* pertained only to a period of time following the subject employees' termination. In the present case, by contrast, the backpay award sought by the Secretary is exclusively for work that *was* performed. The Secretary's theory for seeking backpay is that, between mid-2007 and mid-2010, Cindy's compelled its manicurists and pedicurists to work overtime hours, but did not pay them the time-and-a-half wages that the FLSA requires for hours worked in excess of forty hours in one week. The Secretary further alleges that this lapse on Cindy's part was willful; earlier in 2007, Cindy's had entered into a "back wage compliance and payment agreement" with the Department of Labor under which it paid $45,000 to the Department for distribution to Cindy's employees for unpaid overtime.

Under these circumstances, permitting a claim for backpay on behalf of undocumented workers who earned, but were not paid, overtime wages vindicates not only the policy underlying the FLSA but also federal immigration policy. The FLSA's stated purpose is to protect workers from substandard wages, and to prevent the payment of substandard wages from being used as "an unfair method of competition" against law-abiding competitors. 29 U.S.C. § 292(a)(3); *see* Op. & Order 3. Precisely those ills would arise if an employer were allowed to

assert a defense under the FLSA on the grounds of the employee's immigration status. Such an employer would effectively be immunized from its duty under the statute to pay earned wages, and would thereby be able to undercut law-abiding employers who hired lawful workers, as those workers would not be disabled from vindicating their FLSA rights. The FLSA was clearly designed to prevent such unfair competition and the unjust enrichment of employers who hire illegal workers so as to pay substandard wages.

Further, as a matter of immigration law, denying backpay for earned overtime based on an employee's illegal immigration status creates backwards incentives. *See* Op. & Order 3. Under such a regime, an unscrupulous employer seeking to minimize wages would have a strong temptation to *hire* illegal workers. *See id.* By contrast, where illegal workers are able to vindicate the right to overtime pay conferred by the FLSA, there is no such perverse incentive. This policy consideration is not implicated nearly to the same degree by the fact pattern at issue in *Hoffman* and *Domsey*. There, (1) the work to which the NLRB's backpay remedy related was never was performed by the employees; and (2) the issue at hand was whether such a remedy for a violation of the National Labor Relations Act (NLRA) properly balanced the competing policy goals of federal labor and immigration law.[2]

As a separate point of distinction, both *Hoffman* and *Domsey* arose in the context not of litigation aimed at recompensing workers for historical violations of the FLSA, but in the context

---

[2] There is an independent factual distinction worth noting. In *Hoffman* and *Domsey*, the evidence was that the employee had obtained employment through criminal fraud directed at the employer. The defendant here, Cindy's, has made no such allegation. Rather, the affirmative defense that Cindy's put forth (before withdrawing it) was simply that its employees were illegal aliens. This omission is telling. The Court is left with the impression that Cindy's, in hiring the manicurists and pedicurists whom it asserts were illegal aliens, at best turned a blind eye to their immigration status. The evidence at this week's trial – in which none of the five employee witnesses who testified, all speakers of Mandarin Chinese, had any facility speaking or reading English – did nothing to disturb this impression.

of judicial review of agency administrative action under the NLRA by the NLRB. *See Hoffman*, 535 U.S. at 140-42; *Domsey*, 636 F.3d at 34-35. Thus, the Supreme Court in *Hoffman* held that the NLRB abused its discretion in fashioning the remedy of awarding backpay to an undocumented former employee because the Board lacked authority to contravene federal immigration policy. *See Hoffman*, 535 U.S. at 144 (noting that the Court has "never deferred to the Board's remedial preferences where such preferences potentially trench upon federal statutes and policies unrelated to the NLRA").

The present case, by contrast, presents no issue as to the limit of an agency's remedial discretion where a proposed remedy was in tension with a separate federal statute. Rather, this litigation is brought to vindicate a statute whose plain text extends its protection and remedies (including as to earned overtime pay) to "any individual" employed by an employer, without qualification. 29 U.S.C. § 203(e); *see* Op. & Order 2. As the Court noted in its initial decision on this motion, excluding undocumented workers from the Act's protection would be inconsistent with basic tenets of statutory construction. *See* Op. & Order 2.

## CONCLUSION

For the reasons stated in the foregoing, the Court reaffirms its October 31, 2011 Opinion and Order granting the Secretary's motion *in limine*.

SO ORDERED.

                                             Paul A. Engelmayer
                                             United States District Judge

Dated: December 2, 2011
          New York, New York

6